**CIBA–GEIGY PHARMACEUTICALS DIVISION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 82–3497.

United States Court of Appeals, Third Circuit.

Argued Sept. 13, 1983.

Decided Dec. 6, 1983.

Grotta, Glassman & Hoffman, P.A., Roseland, N.J., Marvin M. Goldstein (argued), of counsel, Joseph J. Malcolm, Barbara A. Sellinger, on brief, Roseland, N.J., for petitioner.

Elinor Hadley Stillman (argued), Jerrold J. Wohlgemuth, Attys., N.L.R.B., Washington, D.C., William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Washington, D.C., for respondent.

Before SEITZ, Chief Judge, GIBBONS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

Ciba-Geigy Pharmaceuticals Division (Ciba) petitions for review of an order of the National Labor Relations Board finding that Ciba violated sections 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(5), (1) (1976), by unilaterally modifying terms of a collective bargaining agreement and conditions of employment without bargaining with International

Chemical Workers Union, Local No. 9, and ordering Ciba to bargain on request. Ciba contends that the Board should not have entertained the Union's unfair labor practice charge, but should have deferred to the decision of an arbitrator. Ciba also contends there was no violation, and that the Union waived its right to bargain over the disputed issue, absentee control procedure, and thus that the Board's order is unsupported by substantial evidence in the record as a whole. We find no abuse of discretion in the Board's refusal to defer. Moreover the Board's violation finding and its rejection of Ciba's waiver contention are supported by substantial evidence. Thus we enforce.

## I.

### Ciba's Action

In 1978 Ciba and the Union were parties to a collective bargaining agreement expiring in April, 1980. The collective bargaining relationship had by then existed for nearly forty years. The collective bargaining agreement dealt, in Article VIII, with employee absences. That detailed article covers leave of absence, absence owing to illness, absence without cause, recurring absences, and funeral absences. The absence owing to illness clause provides for paid sick leave varying with length of service, up to a maximum of 120 days a year, with sick leave fully reinstated as of the first day of each calendar year. App. at 340. Article VIII also provides for a Union role in controlling absence:

> The Union agrees to cooperate with the Company in keeping absenteeism at as low a rate as possible. When cases of absenteeism are brought to the attention of the Union Officers by the Personnel Department, the Union Officers will interview such employees covered by this agreement to determine the cause and, if not justified, assist in eliminating absenteeism.

App. at 341. Moreover the subject of discipline for absence without cause is dealt with in Article VIII, § 3, which provides:

> When a worker absents himself from his work for a period of three (3) days with-

out notice or without consent of the Company other than because of proven illness, or other proper cause, he shall be subject to disciplinary action.

App. at 340-41. Discipline is referred to in Article IX, and is made grievable and arbitrable under Article XVIII of the collective bargaining agreement. The clause on recurring absences authorizes Ciba to require employees "in cases of constantly recurring absences from duty . . . to submit to examination by the Company's physician." App. at 341.

It is clear, therefore, that the entire subject of absenteeism had been the subject of collective bargaining, and that the Union had succeeded in obtaining fairly generous contract provisions in that respect. Perhaps those terms were, from Ciba's standpoint too generous, for it experienced what management eventually determined to be an excessive absentee problem.

To alleviate this perceived problem Ciba's Industrial Relations Manager formulated an Attendance Control Procedure. App. at 355. The Attendance Control Procedure supplements the provisions of Article VIII in several important respects. The plan requires that employees submit a form completed by their physician to obtain payment for five days or more of continuous absence. The arbitrator ordered Ciba to remedy this inconsistency and Ciba complied. All employees having more than ten days absence in a year must automatically submit to an examination by the Company physician. The section on leaves of absence was modified by the provision that "[l]eaves of absence will be denied where such an absence would unreasonably curtail or impair our ability to meet production schedules, or for other proper causes." A new category of chronic absenteeism is created under which any hourly employee with 20 or more days absence during three of the previous four years shall be interviewed, placed on a separate sick leave schedule determined by Ciba, and discharged if his absenteeism exceeds his schedule. It cannot be seriously contended that implementation of the Attendance Control Procedure would not be a

modification of some of the terms of Article VIII.

On April 19, 1978 Ciba notified the Union and the employees of its intent to implement the Attendance Control Procedure. On April 21, 1978 Ciba scheduled a meeting with the Union to discuss the Procedure. The Union raised certain objections, some of which resulted in amendments. Union representatives requested more time to study the plan. On the same day Ciba distributed to employees a copy of the new Procedure with a cover letter indicating that it was being implemented. On April 25 Ciba notified approximately 60 employees that they were considered to be chronic absentees and must be interviewed pursuant to the Attendance Control Procedure for establishment of an individual absentee schedule. App. at 563.

On April 27 the Union protested that implementation of the new Procedure violated the collective bargaining agreement, and on April 28, it filed a grievance pursuant to Article XVIII. Despite the grievance, Ciba continued to implement the Procedure, establishing individual absentee schedules for a number of employees, disciplining some, and discharging seven for absence in excess of their individual schedule.

On July 10, 1978 the Union filed an unfair practice charge alleging that Ciba had failed to bargain over and had unilaterally changed conditions of employment. The Regional Director, noting the pendency of the Union's grievance, determined that he would defer decision on filing an unfair labor practice charge until completion of arbitration.

## II.

### The Arbitration

The Union's grievance was that "[t]he Company's new Attendance Control Procedure is violating the contract." App. at 362. The grievance was rejected at each grievance level, and an arbitrator was appointed. Counsel for Ciba and the Union stipulated that two issues would be arbitrated.

Issue I

Did the Company violate the collective bargaining agreement of April 16, 1977 by establishing an Absentee Control Procedure on or about May 1, 1978?

Issue II

Did the Company violate Section 8(a)(1) and 8(a)(5) of the National Labor Relations Act as amended by implementing the Absentee Control Procedure effective on or about May 1, 1978?

App. at 365. Before the arbitrator, Ciba relied upon two provisions of the collective bargaining agreement. Article XV provides:

Conditions and standards already existing in the plant shall not be changed during the life of this agreement without the consent of the Union, except for the purpose of improving the production or the efficiency of the plant and except as may be required by Government regulations. App. at 344.

Article XVII provides:

1. In the interest of the progress and the development of the business of the Company, nothing in this agreement shall be construed as taking away from the Company its unrestricted right to regulate the methods of production or the kind of machinery, apparatus and equipment used, provided that upon the introduction of any new machine or processes the question of wage scales shall be determined by the Joint Classification Committee.

*Id.* Ciba also urged that the Attendance Control Procedure was consistent with Article VIII of the collective bargaining agreement.

The arbitrator did not rely on Articles XV and XVII. It is clear that any such reliance would have been wrong, for those articles cannot, in context, be read as authorizing unilateral modification of other specifically bargained for contractual provisions. Article XVI requires written consent of both parties for any amendment to the contract. Instead the arbitrator noted that "[s]ince in the judgment of the Arbitrator the Company did not violate the Agreement, except as noted, the Arbitrator finds

moot the question of application of Articles XV, XVI and XVII." App. at 557.

With respect to consistency between the Attendance Control Procedure and the collective bargaining agreement, the arbitrator ruled:

[t]his Arbitrator sees but one inconsistency wherein the Procedure calls for a report from the employee's physician when the employee is absent five days or more . . . while the contract calls for a physical examination to determine fitness to return to work.

App. at 556. In reconciling the rest of the Attendance Control Procedure and Article VIII, however, the arbitrator concluded that the contract is silent on the definition or determination of recurring absences, and observed that "[w]hen the contract is silent, this determination resides with the Company." *Id.* Thus the arbitrator found explicitly that only one unilateral change in the collective bargaining agreement had been made.

Turning to the unfair labor practice charge the arbitrator opined:

Concerning the question of the violation of the NLRA, at this point, the Arbitrator reminds the parties that he has ruled that the Company had not violated, with one exception, the contract when it implemented the Attendance Control Procedure. Basically the procedure did not create conflicts with or change the existing Agreement *except in one section* as noted above. In addition, the Company's right to expect a reasonable level of attendance is well established and accepted.

This being so, when turning to the question of a violation of the National Labor Relations Act as amended, the Arbitrator must conclude that no violation had occurred. If the Procedure conforms to the Contract and any changes and/or additions which were made were made within the confines of the Management Rights Clause, Article XVII and/or the residual right theory, then obviously a violation(s) of the Act is impossible.

App. at 558 (emphasis supplied). This discussion of the unfair labor practice charge is notable in several respects. First, it is inconsistent with the arbitrator's discussion of the contract violation issue. In that part of his decision the arbitrator finds "moot" the application of Article XVII, whereas in discussing the unfair labor practice he seems to rely upon it. That is not clear, however, because he couples the reference to Article XVII to the "residual rights theory," which apparently has roots outside the contract. Second, while the discussion acknowledges that there is one inconsistency between the collective bargaining agreement and the Attendance Control Procedure, no explanation is made for the conclusion that this acknowledged unilateral change did not violate sections 8(a)(1) and (5) of the Act. Finally, there is no discussion of the question whether the arbitrator's extra-contractual residual rights theory justified changes in conditions of employment that are mandatory subjects of collective bargaining.

### III.

### The Board's Non-deferral Decision

Examining the internally inconsistent and altogether mystifying award of the arbitrator, the Regional Director concluded that it is clearly repugnant to the National Labor Relations Act, and issued a complaint, charging that the unilateral implementation of the Attendance Control Procedure, the refusal to bargain over it, and the disciplining of and discharge of employees pursuant to it, were unfair labor practices. Ciba's answer put in issue the statutory violation, and pleaded affirmatively that the Board should defer to the arbitrator's decision referred to in Part II above, or to a pending second arbitration over the employee discharges.

The Administrative Law Judge to whom the case was assigned rejected Ciba's deferral contention for two reasons. He reasoned:

Clearly the arbitrator herein did not follow, or even consider, Board precedent. The basis for his ruling was that the new Attendance Con[t]rol Procedure was not inconsistent with the terms of the collective bargaining agreement. He relied on

a theory that when the contract is silent, the determination resides with the Company. For example the contract refers to "both recurring absences" (Article VIII, Section V), but in the new program Respondent unilaterally defined that to mean "more than ten days of absence." The contract does not spell out the number of days absence beyond which an employee would be subject to termination. In the new program, Respondent set forth specific numbers and provided for termination when they are exceeded by an employee. The Arbitrator's reliance on silence of the contract and a so-called residual management's right theory ignores the large body of law requiring an employer to bargain over contract changes involving mandatory subjects of bargaining, and the award reveals there was no consideration of these issues.

Finally, assuming that the employer had a right to establish, unilaterally, standards for attendance or absenteeism, Respondent herein has set forth a system of penalties including termination of employees, which were not provided in the collective bargaining agreement. Such conduct without bargaining may violate Sections 8(a)(5),[3] and, again, this question was not addressed by the arbitrator.

[3] The *Capital Times Company*, 223 NLRB 651 (1976).

App. at 25. Thus the Administrative Law Judge found that the arbitrator's decision was repugnant to the Act in that it was based on a theory that the Company can unilaterally fill in the gaps in a collective bargaining agreement, even on mandatory subjects of bargaining. He also found that the arbitrator had not addressed the question whether such unilateral action on mandatory subjects of bargaining would violate section 8(a)(5).[1]

Ciba excepted to the Administrative Law Judge's findings that the award was repugnant to the Act. The Board, on September 30, 1982, affirmed his rulings, findings and conclusions. Two Board members noted

that under *Professional Porter & Window Cleaning Co., Division of Propoco, Inc.,* 263 NLRB No. 34 (1982), deferral would be inappropriate. The reference to *Professional Porter* establishes that two members agreed with the Administrative Law Judge that the arbitrator had given no real consideration to the unfair labor practices. Chairman Van de Water, who had dissented in *Professional Porter,* relied exclusively on the ground that because the arbitrator's award is repugnant to the purposes and policies of the Act, deferral is inappropriate. App. at 49. Thus while two members approved the Administrative Law Judge's decision on both grounds, Chairman Van de Water approved it only on the repugnancy ground.

Section 10(a) of the Act provides that the Board's power to prevent unfair labor practices "shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law or otherwise." 29 U.S.C. § 160(a) (1976). The Supreme Court has recognized, however, that "the Board has considerable discretion to respect an arbitration award and decline to exercise its authority over alleged unfair labor practices if to do so will serve the fundamental aims of the Act." *Carey v. Westinghouse Electric Corp.,* 375 U.S. 261, 271, 84 S.Ct. 401, 409, 11 L.Ed.2d 320 (1964). We review the Board's decision not to defer by an abuse of discretion standard. *Schaefer v. NLRB,* 697 F.2d 558, 561–62 (3d Cir.1983); *Hammermill Paper Co. v. NLRB,* 658 F.2d 155, 161 (3d Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 1767, 76 L.Ed.2d 341 (1983). The criteria which the Board applies in the exercise of that discretion include: (1) whether the arbitration proceedings were fair and regular; (2) whether all parties had agreed to be bound; (3) whether the arbitrator's decision is clearly repugnant to the policies of the Act; and (4) whether the statutory unfair labor practice issue was presented to and clearly decided by the

1. Ciba protested that it was denied due process because it had no notice that the Board might base its refusal to defer to the arbitrator's

award on the arbitrator's failure to reach the statutory issue. We find no merit in this claim.

arbitrator. *NLRB v. General Warehouse Corp.,* 643 F.2d 965, 968–69 (3d Cir.1981).

In this case the first two criteria are not in dispute. As to the third, the Administrative Law Judge and all three Board members found the decision to be repugnant to the Act. Two of the three also found the fourth criterion to be applicable. The difference between Chairman Van de Water and the other two members over the fourth criterion does not, however, reflect a belief by the Chairman that the Administrative Law Judge erred in concluding that the arbitrator decided all the statutory issues. Rather, as he discloses in his dissent in *Professional Porter & Window Cleaning Co., Division of Propoco, Inc.,* 263 NLRB No. 34 (1982), the Chairman does not agree that the arbitrator's failure clearly to decide the statutory issue is a reason for nondeferral. But as the Board majority opinion in the *Professional Porter* case points out, that position is inconsistent with our holding in *NLRB v. General Warehouse Corp., supra,* 643 F.2d at 970–71. *See also Hammermill Paper Co. v. NLRB, supra,* 658 F.2d at 161; *St. Luke's Memorial Hospital, Inc. v. NLRB,* 623 F.2d 1173, 1178–79 (7th Cir.1980); *NLRB v. Davol, Inc.,* 597 F.2d 782, 786 (1st Cir.1979); *Stephenson v. NLRB,* 550 F.2d 535, 539 (9th Cir.1977); *John Klann Moving and Trucking Co.,* 411 F.2d 261, 263 (6th Cir.), *cert. denied,* 396 U.S. 833, 90 S.Ct. 88, 24 L.Ed.2d 84 (1969); *Illinois Ruan Transport Corp. v. NLRB,* 404 F.2d 274, 280 (8th Cir.1968).

 It is clear that under the case law in this court either the third or the fourth criterion suffices to sustain the Board's exercise of discretion against deferral. It is equally clear that the record supports the Administrative Law Judge's conclusion that both factors are present. The arbitrator's conclusion that an extra-contractual residual rights theory authorizes management to make unilateral decisions on mandatory subjects of collective bargaining not specifically covered in a collective bargaining agreement disregards clear Board precedent. *E.g., Alfred M. Lewis, Inc.,* 229 NLRB 757 (1977). Moreover it disregards clear precedent in this and other courts. *See Radio Television Technical School, Inc.*

*v. NLRB,* 488 F.2d 457 (3d Cir.1973); *Communication Workers of America, Local 1051 v. NLRB,* 644 F.2d 923, 926–27 (1st Cir.1981); *NLRB v. Wisconsin Aluminum Foundry Co., Inc.,* 440 F.2d 393, 397–400 (7th Cir. 1971) (all rejecting residual rights theory). And, as noted in Part II above, the arbitrator did not discuss whether or not the one unilateral change in the contract which he found was a statutory violation, and did not address the further question whether, aside from that unilateral modification of the contract, a unilateral change in other mandatory subjects of collective bargaining was a statutory violation. This is not a case in which the existence of the unfair labor practice depends on interpretation of the contract, and in which the Board has disregarded the arbitrator's interpretation. *Cf. General American Transportation Corp.,* 228 NLRB 808 (1977). Thus we reject Ciba's contention that the Board committed an abuse of discretion in declining deference to the arbitration decision. Ciba does not pursue here its contention that the Board should have deferred to the second incomplete arbitration.

## IV.

### The Board's Decision on the Merits

 Ciba also contends that we should deny enforcement because the Board's findings of section 8(a)(5) and (1) violations are not supported by substantial evidence. It is settled law that an employer violates section 8(a)(5) and (1) if a material change in the conditions of employment is made without consulting with the employees' bargaining representative and providing a meaningful opportunity to bargain. *E.g., NLRB v. Katz,* 369 U.S. 736, 743–47, 82 S.Ct. 1107, 1111–13, 8 L.Ed.2d 230 (1962); *Hedstrom Co. v. NLRB,* 629 F.2d 305, 317 (3d Cir. 1980), *cert. denied,* 450 U.S. 996, 101 S.Ct. 1699, 68 L.Ed.2d 196 (1981); *Industrial Union of Marine & Shipbuilding Wkrs. v. NLRB,* 320 F.2d 615, 620 (3d Cir.1963), *cert. denied,* 375 U.S. 984, 84 S.Ct. 516, 11 L.Ed.2d 472 (1964). The record supports the Board's conclusion that such a change was made by Ciba. The Attendance Con-

trol Procedure altered the preexisting company policy respecting employee absences. The Union objected to the change at the April 21, 1978 meeting. On the same day the Procedure was mailed to employees. With no further opportunity for bargaining the Company commenced implementation on April 25. Despite the Union's April 27 protest, the implementation was carried out to the extent of discharging employees for violations of the Procedure. All this is substantial evidence of section 8(a)(5) and (1) violations.

 Ciba contends, however, that the Union waived the opportunity to bargain over changes in the attendance policy. The record contains evidence to the contrary. Between April 21 and April 27 there was no occasion for a waiver, and by the latter date the change was a fait accompli. Ciba also claims that Article XV, quoted in Part II above, amounted to a contractual waiver. It would have us read the last clause in the quoted sentence as if it read:

The Company can change provisions of this agreement for the purpose of improving the production or the efficiency of the plant.

The parties did not bargain for an illusory contract. A waiver of a union's statutory collective bargaining rights must be clear and unmistakable. *Texaco, Inc. v. NLRB,* 462 F.2d 812, 815 (3d Cir.), *cert. denied,* 409 U.S. 1008, 93 S.Ct. 442, 34 L.Ed.2d 302 (1972); *Leeds & Northrup Co. v. NLRB,* 391 F.2d 874, 877–78 (3d Cir.1968). The clause relied upon cannot be reasonably interpreted as an authorization either to make unilateral changes in other provisions of the contract or to act unilaterally with respect to mandatory subjects of collective bargaining. Absent a clear agreement to that effect, unilateral changes violated the Act. *NLRB v. C & C Plywood Corp.,* 385 U.S. 421, 425, 87 S.Ct. 559, 562, 17 L.Ed.2d 486 (1967).

 Finally, the Company urges that past conduct by the Union established the company's right to act unilaterally with respect to attendance. Entirely apart, however, from the fact that the instances relied upon, involving safety rules and operating proce-

dures, did not modify specific contractual provisions, it is simply not the law that a waiver of the right to bargain collectively on one issue is a waiver for all purposes for all time. "Each time the bargainable incident occurs—each time new rules are issued —[the] Union has the election of requesting negotiations or not." *NLRB v. Miller Brewing Co.,* 408 F.2d 12, 15 (9th Cir.1969). Here the record discloses that the Union sought the opportunity to bargain over the Attendance Control Procedure. Thus the Board's finding of a section 8(a)(5) and (1) violation is amply supported.

## V.

### Conclusion

The Board did not abuse its discretion in declining to defer to arbitration, and substantial evidence in the record as a whole supports its finding that Ciba violated the Act when it unilaterally implemented the Attendance Control Procedure. Ciba does not contend that the remedy was inappropriate for the violation which was found. The Board's order will, therefore, be enforced in full.

ROSENN, Circuit Judge, dissenting.

In an effort to deal with a growing problem of excessive absenteeism, Ciba-Geigy devised a plan that it submitted in advance to the union for its consideration and reaction. After making some amendments to the plan to satisfy certain union objections, the company proceeded to implement the plan. Protesting that the plan violated the collective bargaining agreement, the union filed a grievance, pursuant to Article XVIII, which ultimately terminated in final binding arbitration. The arbitrator specifically held that the Absentee Control Procedure implemented by Ciba-Geigy was consistent with the collective bargaining agreement and that the company did not violate the National Labor Relations Act by implementing it. I dissent because I believe the Board abused its discretion by declining to defer to the arbitration decision and I would grant Ciba-Geigy's petition for review.

"In labor law, arbitration is clearly the preferred method for resolving disputes between the union and the employer." *Butler Armco Independent Union v. Armco Inc.*, 701 F.2d 253, 255 (3d Cir.1983). There is a strong federal policy in favor of the peaceful settlement of labor disputes by arbitration. *See United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). When the parties have agreed to an arbitration proceeding to construe their contract, "[i]t is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *Id.* at 599, 80 S.Ct. at 1362. Under the Supreme Court's ruling, an arbitrator's award should be upheld so long as it "draws its essence from the collective bargaining agreement." *Id.* at 597, 80 S.Ct. at 1361. This court has held that

> a labor arbitrator's award does "draw its essence from the collective bargaining agreement" if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award.

*Ludwig Honold Manufacturing Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir.1969).

Although the National Labor Relations Board has its own independent responsibility to interpret and enforce the National Labor Relations Act, the Board has also recognized the need to defer to arbitration awards. In *Spielberg Manufacturing Co.*, 112 N.L.R.B. 1080 (1955), the Board announced that it would defer to an arbitrator's award if:

> (1) the proceedings have been fair and regular;
> (2) the parties agreed to be bound by the arbitrator's award;

(3) the unfair labor practice issue was presented to and considered by the arbitrator ("issue presented" standard); and (4) the award is not repugnant to the purposes and policies of the Act ("repugnant to the Act" standard).

Under the Board's policy, "it must defer to private arbitration which complies with [those] guidelines...." *NLRB v. Motor Convoy, Inc.*, 673 F.2d 734, 736 (4th Cir. 1982). The Board's standards for deferral were approved by this court in *NLRB v. General Warehouse Corp.*, 643 F.2d 965 (3d Cir.1981).

The Board will defer not only to prior arbitral decisions, but it will decline to exercise its authority over an unfair labor practice complaint if it believes that arbitration over the contract provisions will resolve the statutory issue. In *Collyer Insulated Wire*, 192 N.L.R.B. 837 (1971), the Board refused to adjudicate a dispute in which the unfair labor practice determination depended upon an interpretation of the contract. The Board stated: "When the parties have contractually committed themselves to mutually agreeable procedures for resolving their disputes during the period of the contract, we are of the view that those procedures should be afforded full opportunity to function." *Id.* at 842–43. When the NLRB defers under *Collyer*, it does so in the expectation that an arbitrator's interpretation of the contract will decide the unfair labor practice question. Of course, if the arbitrator chooses not to resolve the unfair labor practice issue, *see NLRB v. Al Bryant, Inc.*, 711 F.2d 543, 550 (3d Cir.1983); *Hammermill Paper Co. v. NLRB*, 658 F.2d 155, 161 (3d Cir.1981), *cert. denied*, —— U.S. ——, 103 S.Ct. 1767, 76 L.Ed.2d 341 (1983), or answers the contractual question on grounds that do not address the statutory charge, *see NLRB v. General Warehouse Corp.*, 643 F.2d 965, 970 (3d Cir.1981), then the Board may exercise its jurisdiction to determine whether a party has violated the Act.

In the present case, the parties negotiated a provision submitting contract disputes to binding arbitration. When Ciba-Geigy

implemented the new Attendance Control Procedure, the union voluntarily filed a grievance to be adjudicated by an arbitrator pursuant to the collective bargaining agreement. Subsequently, the union lodged an unfair labor practice complaint with the Board. The Regional Director, acting under *Collyer,* deferred consideration of the unfair labor practice charge pending the outcome of the grievance procedure.

The parties then submitted the dispute to what they understood to be binding arbitration. The parties stipulated that the following two issues would be presented to and resolved by the arbitrator:

ISSUE I.

Did the company violate the collective bargaining agreement of April 16, 1977, by establishing an Absentee Control Procedure on or about May 1, 1978?

ISSUE II.

Did the company violate section 8(a)(1) and (5) of the National Labor Relations Act as amended by implementing the Absentee Control Procedure effective on or about May 1, 1978?

The two sides then presented evidence to the arbitrator.

The arbitrator issued an award finding that Ciba-Geigy did not violate the collective bargaining agreement or the Act. He ruled that, with one minor exception, the new procedure was not inconsistent with the established absence provisions. The arbitrator also held explicitly that the implementation of the new procedure did not violate the Act.

The arbitrator provided reasons why the establishment of the new procedure did not give rise to an unfair labor practice. One of the grounds stated by the arbitrator was that the new procedure conformed to the contract.[1] By including an item in a collec-

tive bargaining agreement, a party waives its right to insist upon bargaining over the issue for the duration of the agreement. The parties negotiated and reached agreement over absentee provisions in the contract. They were bound by the collective bargaining agreement's terms. The arbitrator ruled that the Attendance Control Procedure was consistent with and did not violate the contract.

Binding arbitration agreed upon by the parties plays a valuable and necessary function in the disposition of the majority of grievances that arise annually in industrial relations; it is a dispute disposition mechanism in our society that has had a very constructive impact on the caseloads of the federal courts and the Board. Under *Spielberg,* the Board must respect the authority freely given by the parties to an arbitrator to interpret the provisions of the collective bargaining agreement, and should defer to the arbitrator's ruling. Even Judge Gibbons' dissent in *NLRB v. Pincus Brothers Inc.-Maxwell,* 620 F.2d 367, 384–99 (3d Cir. 1980), which advocated limiting the deferral doctrine, stated that the Board should defer to the arbitrator in "section 8(a)(5) and section 8(b)(3) cases involving contract interpretation matters in which the interpretation of the contract by the agreed upon method [binding arbitration] in effect eliminates the predicate for the charge." *Id.* at 399. In his interpretation of the Attendance Control Procedure and the provisions of the contract in this case, the arbitrator found that "the procedure did not create conflict with or change the existing Agreement except in one section. . . ." The company immediately remedied this one inconsistency. The arbitrator has interpreted the contract and held that its terms permitted Ciba-Geigy to implement the attendance procedure without violating the Act.

---

1. The majority also rejects an alternative ground upon which the arbitrator based his decision, that the new procedure could be instituted under the residual rights theory. Under *NLRB v. Pincus Brothers Inc.-Maxwell,* 620 F.2d 367 (3d Cir.1980), "where there are two arguable interpretations of an arbitration award, one permissible and one impermissible, the Board must defer to the decision rendered by the arbitrator." *Id.* at 377. Although I have reservations about the majority's statement that this court has already rejected the residual rights theory, I do not address the residual rights issue because I conclude that the Board abused its discretion by not deferring to the arbitrator's ruling that the Attendance Control Procedure conformed to the contract.

It is a case in which the interpretation of the agreement eliminated the predicate for the charge.

Neither this court nor the Board may reverse an arbitrator's award merely because it would interpret the contract differently, "or simply because the arbitrator's analysis is opaque." *Arco-Polymers, Inc. v. Local 8–74*, 671 F.2d 752, 756 (3d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982). The Board must defer to an arbitrator's award if it meets the *Spielberg* requirements even if the Board disagrees with the contract interpretation. *NLRB v. Pincus Brothers Inc.-Maxwell,* 620 F.2d 367, 374 (3d Cir.1980). This court has held that "[a]s a result of both judicial and Board deference to arbitration awards, an arbitrated result could be sustained which is only arguably correct and which could be decided differently in a trial *de novo.*" *Id.*

The question of whether Ciba-Geigy violated the Act by implementing the Attendance Control Procedure was expressly presented to, considered by, and resolved by the arbitrator. To the extent that the arbitrator construed the collective bargaining agreement to permit the implementation of the procedure, the arbitration merely consisted of a question of contract interpretation, the resolution of which, even if it were incorrect, was not clearly repugnant to the policies of the Act. Prior to the arbitration, the Regional Director withheld further action under *Collyer* operating under the proper assumption that the interpretation of the contract would resolve the unfair labor practice issue. Nevertheless, after the arbitrator issued the award, the Board chose to ignore the arbitrator's findings and reached its own conclusions. Because the arbitrator's award met the requirements of *Spielberg Manufacturing Co.,* 112 N.L.R.B. 1080 (1955), and *NLRB v. General Warehouse Corp.,* 643 F.2d 965 (3d Cir.1981), the Board abused its discretion by declining to defer. I would grant, therefore, Ciba-Geigy's petition for review of the Board's order.