**GRAPHIC ARTS INTERNATIONAL UNION LOCAL 97B**

v.

**HADDON CRAFTSMEN, INC., Appellant.**

**No. 85–5512.**

United States Court of Appeals, Third Circuit.

Argued Feb. 11, 1986.

Decided July 23, 1986.

Sheldon Rosenberg (argued), Rosenberg & Ufberg, Scranton, Pa., for appellant.

Robert D. Mariani, (argued), Mariani and Greco, Scranton, Pa., for appellee.

Before HIGGINBOTHAM and STAPLETON, Circuit Judges, and TEITELBAUM, District Judge *.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This is an appeal from a final judgment of the district court in an action brought by Haddon Craftsmen, Inc., under the Labor Management Relations Act, 29 U.S.C. § 185(a). The district court vacated a labor arbitration award in a grievance case which involved Haddon's implementation of production quotas along with disciplinary penalties for failure to meet those quotas. It held that the arbitrator's award was repugnant to the National Labor Relations Act ("NLRA") and therefore unenforceable. We find that, given the limited scope of review over arbitration decisions afforded the federal courts, the district court erred in vacating the award. Accordingly, for the reasons set forth in the opinion that follows, we will reverse the district court and reinstate the arbitration award.

### I.

The appellant in this case, Haddon Craftsmen, Inc., Scranton, Pennsylvania, ("Haddon" or "Company") is engaged as a contractor in the manufacture of hardcover and softcover books for various publishers. The appellee, Graphic Arts International Union, Local 97B, ("Union") is the exclusive bargaining representative for all employees in the Bindery Department and all other operations related to bindery materials and products at Haddon's manufacturing plant. App. at 3a. Haddon and the Union have had a collective bargaining relationship for approximately 50 years and the collective bargaining agreement which is the subject of the instant appeal extended from April 4, 1983 to April 6, 1986. App. at 4a. The collective bargaining agreement contained a mandatory grievance procedure which culminated in binding arbitration.[1]

On February 1, 1984, without bargaining with the Union or obtaining its assent, Haddon instituted production standards, along with disciplinary sanctions for production below those standards, in the flat bed cutting department. App. at 51a, 53a. On February 3, 1984, the Union filed a grievance which was initially submitted by an employee. Later, in response to Haddon's claim that the employee had no authority to file a grievance questioning the institution of production standards, the Union adopted the grievance and replaced the employee as the grieving party. App. at 53a.

In the Statement of the Grievance, the Union alleged that Haddon violated Article III, Section 5 of the collective bargaining agreement[2] by unilaterally implementing the production quotas in flat cutting. App. at 67a. Neither the employee nor the Union—at that time or since—filed an unfair labor practice charge pursuant to the

---

* Honorable Hubert I. Teitelbaum, United States District Court for the Middle District of Pennsylvania, sitting by designation.

1. Article VIII, Section 6 of the collective bargaining agreement provides "... arbitration shall be held under voluntary labor arbitration rules of the American Arbitration Association and the decision of the arbitrator shall be final and binding." App. at 37a.

2. This section provides that "[t]he Union and the Employer agree not to permit any employee to work for a lower scale, longer hours or under shop practices and working conditions less favorable than those herein provided for. Upon proof of such condition, by either party to the other, the party responsible agrees to take all action necessary to terminate said condition." App. at 17a.

NLRA with the National Labor Relations Board (NLRB).[3] App. at 51a, 53a. In response to the Union's allegations, Haddon denied that it violated Article III, Section 5 of the contract and thus, on August 28, 1984, the unresolved grievance was submitted to arbitration. App. at 75a.

At that proceeding, the Union contended that although no unfair labor practice charge had been filed, the arbitrator had jurisdiction to determine whether the Company's unilateral implementation of the production standards violated § 8(a)(5) of the NLRA. In opposition, Haddon asserted that since (1) no claim had been filed with the NLRB, (2) it had not agreed to submit the § 8(a)(5) allegation to arbitration, and (3) a § 8(a)(5) violation did not fall within the definition of a grievance in Article VIII of the collective bargaining agreement, the arbitrator had no jurisdiction over the § 8(a)(5) claim. App. at 54a.

On September 24, 1984, the arbitrator issued an opinion and award which denied the Union's grievance. In reaching this conclusion, the Arbitrator found that (1) she had no jurisdiction to decide if the Company violated Section 8(a)(5) and (2) the Company did not violate Article III, Section 5 of the Contract. App. at 60a.

After issuance of the Arbitrator's opinion and award, the Union brought an action in federal district court to vacate the Arbitrator's award. On cross-motions for summary judgment, the District Court granted the Union's motion for summary judgment and vacated the Arbitrator's award. The District Court reasoned that

> [w]hile the Arbitrator may not have jurisdiction to decide a naked NLRA claim, she still must read the contract in the light of clearly established federal labor law.... [U]nilateral implementation of quota systems is repugnant to section

8(a)(5) of the NLRA. *Alfred M. Lewis Inc. v. NLRB*, 587 F.2d [403] at 408 (1978). Therefore, ... the award is not enforceable by this Court.

App. at 95a. Accordingly, the District Court vacated the Arbitrator's award and remanded the matter to the arbitrator for further proceeding not inconsistent with its opinion. In this appeal, Haddon Craftsmen contends that the district court erred and, for the reasons set forth below, we agree.

## II.

It is a well settled principle of federal labor law that an arbitrator's award shall not be set aside as long as the award "draws its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960) ("Enterprise Wheel"); *W.R. Grace & Co. v. Local 759*, 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298, *International Brotherhood of Teamsters v. Western Pa. Motor Carriers Ass'n*, 574 F.2d 783, 786 (3d Cir.), *cert. denied*, 439 U.S. 828, 99 S.Ct. 102, 58 L.Ed.2d 122 (1978).

> [T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

*Enterprise Wheel*, 363 U.S. at 599, 80 S.Ct. at 1362.

■ In this circuit, it has been acknowledged on numerous occasions that judicial review of an arbitrator's award is severely limited and that the arbitrator's interpretation of contractual provisions will not be

---

**3.** Section 8(a)(5) of the NLRA, 29 U.S.C.A. § 158(a)(5), provides "[i]t shall be an unfair labor practice for an employer ... to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title."

Section 159(a) provides, in relevant part, that "[r]epresentatives designated or selected for the purposes of collective bargaining ... shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment...."

disturbed "if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award." *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir.1969). *See Super Tire Engineering Co. v. Teamsters Local Union No. 676*, 721 F.2d 121, 124 (3d Cir. 1983), *cert. denied*, — U.S. —, 105 S.Ct. 83, 83 L.Ed.2d 31; *International Brotherhood of Teamsters v. Western Pa. Motor Carriers Ass'n*, 574 F.2d at 786 (3d Cir. 1978), *cert. denied*, 439 U.S. 828, 99 S.Ct. 102, 58 L.Ed.2d 122 (1978); *Amalgamated Meat Cutters & Butcher Workmen of N. America v. Cross Bros. Meat Packers, Inc.*, 518 F.2d 1113, 1121 (3d Cir.1975); *Local 103 of the International Union of Electrical, Radio and Machine Workers v. RCA Corp.*, 516 F.2d 1336, 1340 (3d Cir. 1975). In addition, "... so long as they are not in 'manifest disregard' of the law," the interpretation of labor arbitrators must not be disturbed. *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d at 1128 (quoting *Wilko v. Swan*, 346 U.S. 427, 436, 74 S.Ct. 182, 187, 98 L.Ed. 168 (1953)).

With these principles in mind, we turn to the issue presented to us on appeal: whether the district court erred when it vacated the arbitrator's award because it determined that the award was in direct conflict with clearly established federal labor law.

### III.

### A.

In its analysis of the instant case, the district court relied upon *Alfred M. Lewis, Inc. v. N.L.R.B.*, 587 F.2d 403 (9th Cir. 1978), to support its conclusion that the arbitration award was not enforceable because "... unilateral implementation of quota systems is repugnant to section 8(a)(5) of the NLRA." App. at 95a. On appeal, Local 97B also relies upon *Alfred M. Lewis*, along with *Ciba-Geigy Pharma-*

*ceuticals v. N.L.R.B.*, 722 F.2d 1120 (3d Cir.1983), for the proposition that in the absence of a specific contract right, the unilateral institution of production or work standards, with accompanying penalties, is a refusal to bargain in violation of Section 8(a)(5) of the Act. *See Alfred M. Lewis*, 587 F.2d at 407; *Ciba-Geigy*, 722 F.2d at 1126. Yet, in at least one important aspect, these cases are distinguishable from the instant case.

In both *Alfred M. Lewis* and *Ciba-Geigy*, individual employees or the unions involved had filed unfair labor practice charges with the Board in addition to filing grievances pursuant to their particular collective bargaining agreements. In *Alfred M. Lewis*, for example, the employer had unilaterally instituted a formal program of production quotas, disciplinary procedures for those who consistently failed to meet those quotas, and a change in policy concerning union representation. *See id.* at 406. Under this program, the company discharged and suspended some employees. With respect to each of these disciplinary actions the union filed grievances and the first two complaints were processed through arbitration. After receiving two unfavorable decisions in which the arbitrator upheld the disciplinary actions, the union decided not to arbitrate the remaining grievances. During the pendency of the arbitration proceedings, individual employees filed charges with the NLRB alleging that the company had committed unfair labor practices. *Id.* at 406.

In *Ciba-Geigy, supra*, after the union had filed a grievance pursuant to the collective bargaining agreement and timely filed an unfair labor practice charge with the Board, the NLRB regional director, noting the pendency of the union's grievance, determined that he would defer decision on filing an unfair labor practice charge until the completion of arbitration. *Ciba-Geigy*, 722 F.2d at 1123. At arbitration, counsel for Ciba-Geigy and the union stipulated that two issues would be addressed; first, whether the company violated the collective bargaining agreement by establishing a

procedure to curtail absenteeism and second, whether the company violated §§ 8(a)(1) and 8(a)(5) of the NLRA by implementing that procedure. Thus, along with the collective bargaining agreement grievances, the statutory unfair labor practice issue was presented to and clearly decided by the arbitrator. In response to the unfair labor practice charge, the arbitrator concluded that no violation had occurred. *Id.*, at 1124.

In contrast, Local 97–B, the union involved in the case at bar, failed to file an unfair labor practice charge with the Board within the time limit permitted by the statute of limitations.[4] App. at 55a. In addition, Haddon specifically declined to submit the statutory allegations to the arbitrator or to waive the statute of limitations for filing an unfair labor practice charge. *Id.* Hence, the arbitrator (1) limited her inquiry to whether the company had breached the collective bargaining agreement and (2) circumscribed her award to the "four corners" of that agreement.

The arbitrator stated in her opinion that "[a]t the hearing the parties stipulated that no unfair labor practice [charge] was filed with the NLRB claiming a violation of section 8(a)(5) of the N.L.R.A." App. at 53a. In the arbitration proceeding, the Union contended that although no unfair labor practice charge had been filed, the arbitrator had jurisdiction to determine whether the Company's actions violated § 8(a)(5). Haddon, on the other hand, asserted that the arbitrator had no jurisdiction over an 8(a)(5) claim because (a) no claim had been filed with the Board, (b) Haddon did not agree that the claimed 8(a)(5) violation should be treated by the arbitrator, and (c) a violation of 8(a)(5) did not fall within the definition of a grievance in Article VIII of the collective bargaining agreement. App. at 54a.

4. The NLRA, § 10(b), as amended, 29 U.S.C.A. § 160(b), Labor Management Relations Act, 1947, sets forth a limitations period of six months for bringing unfair labor practice charges.

5. *See United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347,

The arbitrator did not entertain the merits of a possible § 8(a)(5) violation but instead only reached the threshold question of jurisdiction. As the district court summarized, "[b]y interpretation of the requisites noted in the [relevant case law][5], the arbitrator found that she was without jurisdiction to decide a naked NLRA claim absent a specific agreement between the parties to submit to arbitration rather than pursue the matter before the NLRB." App. at 93a. This finding, the District Court concluded on review, "... did *not* demonstrate a manifest disregard for the law. Therefore, we are *without* authority to vacate this portion of her award." (emphasis added). App. at 93a. With this conclusion of the District Court, we agree.

## B.

Under national labor policy, management and organized labor have both contractual rights derived from collective bargaining agreements and statutory rights stemming from public laws and, as enunciated by the Supreme Court, "[b]oth rights have legally independent origins and [both] are equally available to the aggrieved employee." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52, 94 S.Ct. 1011, 1021, 39 L.Ed.2d 147 (1974). In *Gardner-Denver*, the Supreme Court decided under what circumstances, if any, an employee's statutory right to trial de novo under Title VII may be foreclosed by prior submission of his claim to final arbitration under the nondiscrimination clause of a collective-bargaining agreement. The Court held that the federal court should consider the employee's claim de novo because an individual does not forfeit his private cause of action by first pursuing arbitration. "... [T]he federal policy favoring arbitration of labor disputes

1352, 4 L.Ed.2d 1409 (1960); *Trustees of the Local 478 Trucking and Allied Industries Pension Fund v. Siemens Corp.*, 721 F.2d 451, 454 (3d Cir.1983) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he had not agreed to so submit.").

and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance-arbitration clause of a collective-bargaining agreement and his cause of action under Title VII." *Id.*, 415 U.S. at 59–60, 94 S.Ct. at 1025.

In reaching this conclusion, the Court presented an analysis of the distinctions between contractual rights and statutory rights that is particularly relevant here. Justice Powell, writing for the Court, explained that

[i]n submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums. The resulting scheme is somewhat analogous to the procedure under the National Labor Relations Act ... where disputed transactions may implicate both contractual and statutory rights. Where the statutory right underlying a particular claim may not be abridged by contractual agreement, the Court has recognized that consideration of the claim by the arbitrator as a contractual dispute under the collective-bargaining agreement does not preclude subsequent consideration of the claim by the National Labor Relations Board as an unfair labor practice charge or as a petition for clarification of the union's representation certificate under the Act. *Carey v. Westinghouse*

*Electric Corp.*, 375 U.S. 261 [84 S.Ct. 401, 11 L.Ed.2d 320,] (1964).

*Id.*, 415 U.S. at 44–50, 94 S.Ct. at 1017–20.

■ In the case at bar, it can be reasonably asserted that the disputed transaction implicated both contractual and statutory rights. The Arbitrator found that absent either a specific agreement between the parties to submit the NLRA claim to arbitration or circumstances where the NLRB had expressly deferred the NLRA bargaining duty issue to arbitration, she had no jurisdiction over the Union's "naked" NLRA allegation.[6] She found the Union's claim that the Board would defer to arbitration—as a matter of routine—to be "speculative." "It would be improper, [she stated,] for the arbitrator to make a presumption as to the actions to the board." App. at 56a.

In light of both the case law and academic commentary, this was not an unreasonable approach. "While the NLRB is concerned with the prevention of unfair labor practices under federal law and is thus primarily concerned with statutory and policy considerations," the "arbitrator's domain mainly covers questions of contractual interpretations." *Stephenson v. NLRB*, 550 F.2d 535, 539 (9th Cir.1977). Ultimately, "[a]n arbitrator's power is both derived from, and limited by, the collective bargaining agreement," *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 744, 101 S.Ct. 1437, 1446, 67 L.Ed.2d 641 (1981), and

... even though a particular arbitrator may be competent to interpret and apply statutory law, he may not have the contractual authority to do so.... He 'has no general authority to invoke public laws that conflict with the bargain between the parties.' [Citing *Gardner-Denver*, 415 U.S., at 53, 94 S.Ct. at 1022]. His task is limited to construing the meaning of the collective bargaining

---

**6.** Professors Elkouri and Elkouri have noted that although many if not most arbitrators in private-sector cases have an option or choice to consider or not to consider external law, they are *not required* to do so unless it is clearly

mandated by (1) the submission agreement, under which the arbitrator accepts and is vested with jurisdiction, or (2) the collective agreement itself. **Elkouri & Elkouri, How Arbitration Works, 377.**

agreement so as to effectuate the collective intent of the parties.

■ Thus, because the arbitrator properly disclaimed authority to consider the NLRA issue and constrained herself to an interpretation of the terms of the contract which "drew its essence" from that agreement, an award was fashioned which should not be disturbed by judicial review. Judicial review of a labor arbitration award "is limited to ascertaining whether the arbitrator acted within the scope of the arbitration agreement." *Kane Gas Light & Heating v. International Brotherhood of Firemen and Oilers,* 687 F.2d 673, 678 (3d Cir.1982), *cert. denied,* 460 U.S. 1011, 103 S.Ct. 1251, 75 L.Ed.2d 480.

### IV.

Ironically, seven years ago, a very similar case was brought before the federal district court of the Middle District of Pennsylvania, Chief Judge Nealon presiding. In that case, captioned *Graphic Arts International Union, Local 97–B v. Haddon Craftsman,* 489 F.Supp. 1088 (M.D.Pa. 1979), the same company and union involved in the instant appeal presented, *inter alia,* the same dispute before us now. Relying on *Alfred Lewis* to support its claim, Local 97–B alleged that Haddon's unilateral imposition of a disciplinary system constituted failure to bargain and a violation of § 8(a)(5) of the NLRA. In pointing out that "[t]his argument misses the point," Chief Judge Nealon noted:

> [t]he question before the arbitrator was *not* whether the imposition of the program constituted an unfair labor practice but whether it violated the terms of the collective bargaining agreement. A charge of an unfair labor practice is not necessarily coextensive with a charge of a violation of the collective bargaining agreement. *See International Union of Electrical Workers v. General Electric Co.,* 278 F.Supp. 991, 1002 (S.D.N.Y.), modified on other grounds, 407 F.2d 253 (2nd Cir.1968), cert. denied, 395 U.S. 904, 89 S.Ct. 1742 [23 L.Ed.2d 217] ... (1969). Arbitrator Pollock properly constrained

himself to an interpretation of the terms of the contract. The Union, of course, is free to file a charge with the NLRB; this Court is not free to overturn an otherwise valid arbitration award.

*Id.* at 1099. With this, the district court concluded that the arbitration awards should not be set aside and accordingly, judgment was entered in favor of Haddon Craftsman.

Chief Judge Nealon's analysis and conclusion remains convincing and correct and the decision rendered in that opinion has not been challenged or reversed. We find it persuasive and accept its reasoning.

### V.

We find that the district court erred in holding that the arbitrator's award evidenced a manifest disregard for the law. Consequently, we will reverse the district court and will reinstate the award of the arbitrator.