NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 15-1883

———————

NATIONAL LABOR RELATIONS BOARD,
                                                    Petitioner
                            v.

REGENCY HERITAGE NURSING
AND REHABILITATION CENTER,
                                                    Respondent

———————

On Petition for Review
for Enforcement of an Order of the
National Labor Relations Board
(NLRB-1:22-CA-074343)

———————

Submitted under Third Circuit LAR 34.1(a)
on April 6, 2016

Before:  FISHER, RENDELL, and BARRY, Circuit Judges

(Opinion filed:  August 16, 2016)

———————

O P I N I O N*

———————

**RENDELL**, Circuit Judge:

———————

   * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

The National Labor Relations Board (the "Board") seeks enforcement of the Order it issued against Regency Heritage Nursing and Rehabilitation Center ("Regency"). The Board found that Regency failed to provide 1199 Service Employees International Union, United Healthcare Workers East, New Jersey Region (the "Union"), an opportunity to bargain over a change to the terms and conditions of employment in violation of Sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act ("NLRA"). We will grant the Board's Application and enforce its Order against Regency.

## I. Background

As the Board found below, Regency currently operates a nursing home in Somerset, New Jersey. A unit of "nonprofessional" employees of Regency's nursing home are represented by the Union. Regency and the Union reached a collective-bargaining agreement (the "Agreement") that was in effect between March 1, 2008, and February 28, 2011. The Agreement set the minimum rates for Union-member wages and provided the conditions necessary to earn those rates. Specifically, the Agreement provided that eligible employees would be eligible for the minimum wage rates after completing a "probationary" period of 90 to 120 days at the beginning of their employment.

After the Agreement expired, however, Regency no longer paid the minimum wages established by the Agreement to newly hired employees. Between March 1, 2011, and December 4, 2012, Regency hired seventy individuals that would have been covered by the then-expired Agreement. Once these seventy newly hired employees finished their probationary periods, however, Regency failed to pay them the contractual minimum

2

wages set in the Agreement. Regency did not notify the Union of this change in payment rates. The Union filed a charge against Regency with the Board on February 7, 2012, alleging that Regency had made a unilateral change to the Agreement, thereby denying the Union an opportunity to bargain over a change to the terms and conditions of employment in violation of Sections 8(a)(1) and 8(a)(5) of the NLRA.

The Board agreed and issued an order against Regency. Under the Order, the Board directed Regency to take the following actions: (1) notify and bargain in good faith with the Union before implementing changes to compensation or terms of employment; (2) rescind the unlawful changes made to the minimum wage rates; and (3) make whole all affected employees for losses sustained as a result of the unlawful changes to wage rates.

## II.  Jurisdiction and Standard of Review

We have jurisdiction over the Board's petition for enforcement pursuant to Section 10(e) of the NLRA. *See* 29 U.S.C. § 160(e). We review questions of law *de novo* but will uphold the Board's interpretations of the NLRA if they are reasonable. *MCPC Inc. v. NLRB*, 813 F.3d 475, 482 (3d Cir. 2016). We must accept the Board's factual findings so long as they are supported by substantial evidence. *Id.* (citing 29 U.S.C. § 160(f)). We review the Board's recusal decisions and its determinations whether to defer matters to arbitration under an abuse-of-discretion standard. *See 1621 Route 22 W. Operating Co., LLC v. NLRB*, Nos. 15-2466 & 15-2586, 2016 WL 3146014, at *10 (3d Cir. June 6, 2016); *NLRB v. Yellow Freight Sys., Inc.*, 930 F.2d 316, 322 (3d Cir. 1991).

## III.  Analysis

3

*A.      Regency's Practices Following the Agreement's Expiration*

Regency claims that the Board erred because Regency was not required to comply with the Agreement's minimum-wage-rate standards or bargain over these terms for employees hired after the expiration of the Agreement. The Board disagreed, and we perceive no error in the Board's conclusion. Section 8(a)(5) of the NLRA makes it unlawful for an employer "to refuse to bargain collectively with the representatives of his employees." 29 U.S.C. § 158(a)(5). "An employer violates section 8(a)(5) . . . if a material change in the conditions of employment is made without consulting with the employees' bargaining representative and providing a meaningful opportunity to bargain." *Ciba-Geigy Pharm. Div. v. NLRB*, 722 F.2d 1120, 1126 (3d Cir. 1983). This requirement extends to situations where a collective bargaining agreement has expired and negotiations on a new agreement have not been completed. *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 198 (1991). Regency concedes that it paid employees hired after the expiration of the Agreement less than the Agreement required—*i.e.*, that it made a material change with respect to the wages paid to these employees.

Regency argues, however, that, because those employees were hired after the expiration of the Agreement, it was not required to maintain Agreement-level wages for those employees. Board precedent, however, which Regency did not address, supports a finding that employees hired after the expiration of a collective bargaining agreement are covered by Section 8(a)(5)'s protections. *See, e.g.*, *Mack Trucks*, 294 N.L.R.B. 864, 865 (1989); *Chase Mfg., Inc.*, 200 N.L.R.B. 886, 886 (1972). As the Board noted in its decision below, allowing unilateral changes to the conditions of employment for new

4

hires would "eviscerate the Union's status as exclusive bargaining representative." *See* App. at 13.

Regency urges, however, that the newly hired employees were akin to job "applicants," who were not covered by the expired Agreement. This characterization of the newly hired employees as "applicants" is untenable. The cases cited by Regency concern *unhired* applicants who could not be considered part of the "bargaining unit" of the Union. As explained in *Star Tribune*, 295 N.L.R.B. 543, 546 (1989), which Regency relies upon:

> Applicants for employment do not fall within the ordinary meaning of an employer's "employees." Applicants perform no services for the employer, are paid no wages, and are under no restrictions as to other employment or activities. And, unlike the intermittent employment situation that gives rise to the need of employers and unions for hiring halls, there is no economic relationship between the employer and an applicant, and the possibility that such a relationship may arise is speculative. We further conclude that the applicants could not properly be joined with the active employees in the Guild unit because they do not share a community of interest broad enough to justify their inclusion in the bargaining unit.

Here, unlike in *Star Tribune*, the employees were hired, were performing services for Regency, and were, therefore, part of the same "bargaining unit" as the employees hired before the expiration of the Agreement. We find no error in the Board's conclusion.

B.      *Timeliness of the Board's Enforcement Action*

Regency next argues that the Union's Charge was filed with the Board after the six-month statute of limitations had expired. However, that six-month clock does not begin until "an aggrieved party has 'clear and unequivocal notice' of a violation of the NLRA." *NLRB v. Pub. Serv. Elec. & Gas Co.*, 157 F.3d 222, 227 (3d Cir. 1998). Either

5

actual notice or constructive notice will trigger the six-month clock. *See In Re M & M Auto. Grp., Inc.*, 342 N.L.R.B. 1244, 1246 (2004). Thus, the question before the Board was whether, at least six-months before the Charge was filed, the Union had knowledge of the violations or, with reasonable diligence, should have had knowledge of the violations. *See id.* Regency has the burden of proving the untimeliness of the Charge, and we review the Board's findings for substantial evidence. *See Pub. Serv. Elec. & Gas Co.*, 157 F.3d at 228.

Regency has provided no support for the notion that the Union had "clear and unequivocal notice" of the violation of the NLRA before six months prior to its filing of the Charge. Indeed, despite several requests from the Union, Regency repeatedly failed to disclose the wages paid to these newly hired employees. Given this evidence of Regency's concealment, there is substantial evidence to support the Board's findings with regards to the statute of limitations. *Cf. id.* ("[T]he six-month limitations period is not meant to punish a party who delays in filing due to the ambiguous conduct of another party . . . .").

### C.    *Member Hirozawa's Failure to Recuse Himself*

Additionally, Regency claims that the Board erred because Board Member Kent Hirozawa failed to recuse himself from the matter. We review Member Hirozawa's decision not to recuse himself under a deferential, abuse-of-discretion standard. *See 1621 Route 22 W. Operating Co.*, 2016 WL 3146014, at *10. That is, we ask whether it was

arbitrary or unreasonable for Member Hirozawa to conclude that his recusal was not required. *See id.* ("We . . . do not . . . make the recusal decision anew; rather, we simply review whether the decision was arbitrary or unreasonable.").

Regency points to two ostensible connections that Member Hirozawa has with this case. The first, and more direct, connection stems from his employment at the law firm Gladstein, Reif & Meginniss LLP ("Gladstein"), which ended in 2010. Gladstein has represented the Union for many years and represented the Union before the Board in this case. However, there is no allegation that Hirozawa himself ever represented the Union, and the present matter was not initiated until after he left the firm. Indeed, his employment at Gladstein ended more than three years before this case was brought before him. We conclude that it was neither arbitrary nor unreasonable for Member Hirozawa to conclude that his former relationship with Gladstein did not require him to recuse himself in this case. *Cf. Draper v. Reynolds*, 369 F.3d 1270, 1281 n.18 (11th Cir. 2004) ("[A]ssuming that a judge is no longer receiving financial payment from a former law firm, a two-year recusal period is generally reasonable."); *see also* 5 C.F.R. § 2635.502(a) (providing that an executive-branch employee should not participate in matters involving "[a]ny person for whom the employee has, *within the last year*, served as . . . attorney." (emphasis added)); Ethics Commitments by Executive Branch Personnel, 74 Fed. Reg. 4,673 (Jan. 21, 2009) (providing that every presidential appointee must pledge to not, "*for a period of 2 years* . . . participate in any particular matter involving specific parties that is directly and substantially related to [the

7

appointee's] former employer or former clients, including regulations and contracts."
(emphasis added)).

The second alleged connection concerns Member Hirozawa's successor as chief counsel to Chairman (then-Member) Mark Pearce. In 2010, Hirozawa left Gladstein to serve as chief counsel to then-Member Pearce. He served in that position until 2013, when he became a member of the Board. Chairman Pearce's next chief counsel was Ellen Dichner, who has previously represented the Union in this litigation. Chairman Pearce is not participating in this case, however, and Ms. Dichner, since leaving Gladstein, is likewise not involved in the case. We conclude that Member Hirozawa's connection with Ms. Dichner, who did not participate in this case, does not raise any inference that Member Hirozawa was unable to be impartial. *Cf. 1621 Route 22 W. Operating Co.*, 2016 WL 3146014, at *10 (rejecting argument that Chairman Pearce was required to recuse himself from a case because his chief counsel, Ellen Dichner, who was screened from the case, had previously represented a party in that same case before Chairman Pearce).

We therefore conclude that Member Hirozawa's decision not to recuse himself was not an abuse of his discretion.

### D.     *Failure of the Board to Send this Action to Arbitration*

Finally, Regency argues that the Board erred in not sending this case to arbitration. We review the Board's deferral decision for abuse of discretion. *Yellow Freight*, 930 F.2d at 322. We agree with the Board that this case did not need to be sent to arbitration.

Regency argues that this matter is part of an ongoing arbitration. The Board found otherwise, concluding that the current dispute was not encompassed in the ongoing arbitration between the parties. Regency has not articulated any basis for us to reverse that finding, and we ourselves perceive no fault in that finding. We also agree with the Board that deferral to arbitration was not otherwise required. Arbitration clauses do not survive the expiration of the contract unless the dispute arises under the contract. *See Litton*, 501 U.S. at 199-201 (affirming the Board's conclusion that "arbitration clauses are excluded from the prohibition on unilateral changes"). Here, the dispute did not arise under the contract itself, but rather under a statute prohibiting an employer from making "a material change in the conditions of employment . . . without consulting with the employees' bargaining representative and providing a meaningful opportunity to bargain." *See Ciba-Geigy*, 722 F.2d at 1126.

### III. Conclusion

For the foregoing reasons, we will grant the Board's Application to enforce its Order against Regency.