**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**International Brotherhood of Electrical Workers, Local 309, Intervening-Party Petitioner,**

v.

**PFIZER, INC., Respondent.**

**No. 84–1550.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 8, 1985.

Decided June 7, 1985.

Robert Broderick, Pope & Driemeyer, Belleville, Ill., Ann C. Jones and Elliott Moore, N.L.R.B., Washington, D.C., for petitioner.

Sally E. Barker, Schuchat, Cook & Werner, St. Louis, Mo., for respondent.

Before WOOD, ESCHBACH and POSNER, Circuit Judges.

ESCHBACH, Circuit Judge.

The National Labor Relations Board ("Board") seeks enforcement of its order finding Pfizer, Inc. in violation of § 8(a)(1) and (5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(1) and (5), for refusing to supply information relevant to the processing of an employee grievance, and ordering production of that information and certain other remedies. Pfizer opposes enforcement, claiming that the in-

formation is irrelevant to the grievance, and is at any rate confidential.[1] We enforce the Board's order.

I.

William Toon and Calvin Kramer were fired from their jobs at Pfizer's manufacturing plant for fighting. Toon, represented by the Electricians' union,[2] and Kramer, represented by the Painters' union,[3] filed grievances under the provisions of their respective collective bargaining agreements. While the grievances were awaiting arbitration, Toon and the Electricians requested copies of various documents from the company, among them documents reflecting Kramer's work record with Pfizer and documents that showed how the company had responded to previous fights between employees.[4] Pfizer refused to supply any documents from Kramer's work record without Kramer's permission, and made only a limited response to the second request.

---

1. On June 20, 1984, Pfizer filed a motion to supplement the record on appeal with documents it claimed were relevant to the issue of mootness, appending an arbitrator's decision rendered November 26, 1982, and a copy of a memorandum of understanding between the parties dated June 22, 1983. That motion was denied by order of this court on June 29, 1984. Pfizer then filed a motion to dismiss the Board's application for enforcement on July 23, 1984, appending the same documents it had submitted with its previous motion. Pfizer's motion was again denied by order of the court on August 6, 1984. Undeterred, Pfizer has continued to advance mootness arguments premised on these documents both in its brief and at oral argument, at which time the panel accepted a copy of the memorandum of understanding Pfizer claimed decisively established that the Board's order would have no effect and should not be enforced. Our examination of the memorandum (which, far from evidencing a relinquishment of all claims to further relief by the employee, merely states that the employee will not further pursue interest on his back-pay award) and the arbitrator's decision (which did not give the employee all the relief he sought) convinces us that the court's previous orders were correct, and that Pfizer's mootness arguments are without merit.

2. International Brotherhood of Electrical Workers, Local 309.

3. Local 1850, International Brotherhood of Painters and Allied Trades, AFL–CIO.

4. Specifically, the Electricians requested

A copy of all documents in the Company's possession that reflect upon Cal Kramer's work record at the Company, including, but not limited to, documents that relate to or reflect the following:

A. All oral or written warnings or other disciplinary action taken by the Company against Mr. Kramer;

B. All evaluations of Mr. Kramer's work performance while employed at the Company;

C. Mr. Kramer's positions, dates held, and the wage rate he received in each position during the period he has worked for the Company;

D. Any promotions or commendations Mr. Kramer has received while employed at the Company.

\*    \*    \*    \*    \*    \*

Copies of all documents that reflect any assaults committed by an employee or fights that have occurred between employees on the Company's premises since January 1, 1979, including, but not limited to, documents that reflect the Company's response to these incidents, disciplinary actions taken against any party to these incidents, and any grievance filed regarding such incident and the disposition thereof. (Stip. of Rec., Exhibit 4).

After renewing its requests for the documents without success, the Electricians on June 24, 1982 filed unfair labor practice charges before the Board alleging that Pfizer had violated § 8(a)(1) and (5) by refusing to provide documents relevant to Toon's grievance. After investigation, the Board's regional office issued a complaint and a notice of hearing on July 25. In the meantime, the parties had begun arbitration hearings on the propriety of the discharges. During the hearings, Pfizer's personnel director, Stephens, testified that while the company had a written rule that stated that fighting was an offense punishable by immediate discharge, the company in fact applied a progressive disciplinary system. Thus, Stephens testified, he consulted both employees' work records and the company's internal records of similar prior incidents involving other employees before deciding that discharge was the appropriate response to the fight between Toon and Kramer.

At the close of the arbitration hearing, the arbitrator agreed to reopen the record for submission of additional documents depending on the outcome of the unfair labor practice proceedings. As of September 15, when the parties stipulated to the record before the Board, the arbitrator had issued no award concerning Toon's discharge. The General Counsel, the Electricians, and Pfizer had agreed to waive a hearing before an administrative law judge and to submit the case for decision directly to the Board on a stipulated statement of facts.

On February 14, 1984, the Board found the company in violation of § 8(a)(1) and (5) for refusing to provide information relevant to Toon's grievance. It ordered Pfizer to cease and desist from withholding information "which is relevant and reasonably necessary to the processing and evaluation of grievances and preparing them for arbitration," or from refusing to bargain with the Electricians in the future in any like manner. 268 NLRB 916, 920 (1984). Moreover, it ordered Pfizer to provide the Electricians with documents concerning Kramer's work record, and documents concerning assaults or fights that have oc-

curred at Pfizer's plant, and Pfizer's response thereto. *Id.*

The Board now seeks enforcement of its order in this court.

## II.

An employer's duty to bargain collectively with the majority representative of its employees, imposed by § 8(a)(5) of the NLRA, includes the duty to furnish information relevant to a labor union's proper performance of its duties under a collective bargaining agreement. *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 303, 99 S.Ct. 1123, 1125, 59 L.Ed.2d 333 (1976); *NLRB v. Acme Industrial Corp.*, 385 U.S. 432, 437–38, 87 S.Ct. 565, 568–69, 17 L.Ed.2d 495 (1967); *NLRB v. Truitt Manufacturing Co.*, 351 U.S. 149, 76 S.Ct. 753, 100 L.Ed. 1027 (1956). This duty to provide relevant information unquestionably extends to information that might be relevant to the processing and evaluation of employee grievances. *Acme Industrial*, 385 U.S. at 437–38, 87 S.Ct. at 568–69; *NLRB v. Custom Excavating, Inc.*, 575 F.2d 102, 106 (7th Cir.1978).

Pfizer appears to have abandoned its claim that information concerning its previous responses to similar employee conduct lacks relevance. Instead, it focuses on the Board's order that it release to the Electricians information in Kramer's personnel file. Pfizer opposes enforcement of the Board's order on two grounds: first, it asserts that the information in the file is not relevant to Toon's grievance; second, it contends that even if relevant, the information is confidential and therefore subject to limitations on disclosure.

### A. Relevance

In determining whether an employer is obligated to supply particular information, the Board need only find a probability that the information is relevant and that it will be of use to the union in carrying out its statutory duties. Relevance in this context is determined under a "discovery-type" standard, not a trial-type standard, and thus "a broad range of potentially useful

information should be allowed the union for the purpose of effectuating the bargaining process." *Procter & Gamble Manufacturing Co. v. NLRB*, 603 F.2d 1310, 1315 (8th Cir.1979); *General Motors Corp. v. NLRB*, 700 F.2d 1083, 1088 (6th Cir.1983); *Press Democrat Publishing Co. v. NLRB*, 629 F.2d 1320, 1325 (9th Cir.1980) and cases cited therein; *see Acme Industrial, supra*, 385 U.S. at 437, 87 S.Ct. at 568. While there appears to be some disagreement over the standard of review of the Board's determinations of relevancy in this context,[5] we need not attempt to rule definitively on the correct standard, for our review convinces us that under any standard, the information sought by the Electricians from Kramer's file was relevant to its presentation of Toon's grievance. The company official who made the decision to fire Toon testified that he had used the information sought by the union in arriving at his decision. Personnel director Stephens testified that the company's progressive disciplinary procedure requires an examination of an employee's overall work record, as well as the company's response to similar rules infractions, before a decision is reached concerning the appropriate sanction for an individual employee. Thus, if Kramer's work record differed significantly from Toon's—and it apparently did—it would provide a basis for the union to argue that identical punishments were not appropriate under the company's own policy.

■ Relying on *S & W Motor Lines, Inc. v. NLRB*, 621 F.2d 598, 603 (4th Cir.1980), Pfizer argues that a stricter standard of relevance should obtain when the request for information concerns non-bargaining unit employees. *S & W* will not support such a reading. In that case, the collective bargaining agreement between the employer and the union had expired, and negotiations for a new contract were not going well. The union sought information concerning layoffs of non-bargaining unit employees without attempting to explain or justify its request. Under the facts of that case, the court determined that the employer was under no obligation to comply with the request, noting the possibility of improper motive on the part of the union. *Id.* at 603. Here, the union is attempting to fulfill its obligations under a current contract, and there is no suggestion of any improper motive. Moreover, courts have generally responded to union requests for information about non-bargaining unit employees not by increasing the threshold for finding relevance but by shifting the burden of showing relevance to the union in the first instance. (Information concerning bargaining unit members is usually considered presumptively relevant.) *See, e.g., E.I. Dupont de Nemours and Co. v. NLRB*, 744 F.2d 536, 538 (6th Cir.1984); *Press Democrat, supra*, 629 F.2d at 1325. The Union has met that burden here. Accordingly, we reject Pfizer's claim that the information sought by the Electricians is irrelevant.

## B. Confidentiality

■ Pfizer argues that even if the personnel file is relevant, it may premise disclosure on obtaining Kramer's permission because the file is confidential material pro-

---

5. Some courts, apparently assuming that a relevancy determination is a question of fact, adhere to a "substantial evidence on the record as a whole" standard of review. *See General Motors Corp. v. NLRB*, 700 F.2d 1083, 1088 (6th Cir.1983); *Press Democrat Publishing Co. v. NLRB*, 629 F.2d 1320, 1325–26 (9th Cir.1980); *Procter & Gamble Manufacturing Co. v. NLRB*, 603 F.2d 1310, 1313 (8th Cir.1979) (since the Board applied the correct legal standard, the question is whether conclusion of relevancy is supported by the record). Other courts, usually relying on *San Diego Newspaper Guild v. NLRB*, 548 F.2d 863, 867 (9th Cir.1977), state that the Board's relevancy determination is entitled to "great weight" either because it is a finding of fact or because it is a mixed question of fact and law which is within the particular expertise of the Board. *See, e.g., NLRB v. Brazos Electric Power Cooperative, Inc.*, 615 F.2d 1100, 1101 (5th Cir.1980). The counting of "even distinguished judicial [noses]" is no substitute for analysis on this issue, *Mosey Manufacturing Co. v. NLRB*, 701 F.2d 610, 614 (7th Cir.1983) (en banc); that analysis is not necessary to the disposition of this case, however, so we leave it for another day.

tected by *Detroit Edison Co. v. NLRB,* 440 U.S. 301, 99 S.Ct. 1123, 59 L.Ed.2d 333 (1979).

In *Detroit Edison,* the union sought certain information concerning statistically-validated psychological aptitude tests for use in processing grievances for employees who had been denied promotions based on the results of those tests. Among the information sought was the numerical test scores of named individual employees. The employer refused to provide the scores without the permission of the affected employees, arguing that it had promised the employees that it would not reveal their test scores, and that when scores had been revealed in the past, it had led to the harassment of low-scoring employees. Moreover, the industrial psychologists who administered the tests did not reveal the actual scores to management or employee representatives. The Court overturned the Board's finding that the employer had violated § 8(a)(5). Noting that there is no absolute rule that the union's interest in arguably relevant information must always predominate over all other interests no matter how legitimate, the Court took judicial notice of the sensitive nature of psychological test scores and found that the employer's refusal to release the scores without the employees' permission did not violate § 8(a)(5).

Pfizer has not attempted to make any showing, before the Board or before this court, that Kramer's personnel file, or any part of it, contains sensitive information, or that it treats information in the file as confidential in the normal course of business. Pfizer does not assert that it ever promised its employees that these records would be treated as confidential. *Cf. Detroit Edison, supra; New Jersey Bell Telephone Co. v. NLRB,* 720 F.2d 789 (3d Cir. 1983) (attendance and tardiness records containing personal reasons for absences protected by company's Employee Privacy Protection Plan). Nor did it make any attempt to narrow the scope of the Electricians' demand for these records. On the present record, then, Pfizer's claim amounts to an argument that employee personnel files are per se confidential. We refuse to adopt such a rule. While we recognize that employee personnel files often contain sensitive information, *see Detroit Edison,* 440 U.S. at 319 n. 16, 99 S.Ct. at 1133 n. 16, the contents of such records are by no means uniform. Some information contained in personnel files may be completely innocuous while other information could be of the most personal and sensitive nature. We believe, then, that the burden of showing a legitimate claim to confidentiality should be on the employer who is resisting production of the files. While a "union's bare assertion that it needs information ... does not automatically oblige the employer to supply all the information in the manner requested," *id.* at 314, 99 S.Ct. at 1130, neither does an employer's bare assertion that the information sought is confidential entitle it to resist production with impunity. We agree with the Board's conclusion that Pfizer has failed to demonstrate a legitimate claim to confidentiality.

### III.

For the reasons expressed above, the order of the Board is enforced.