In the

# United States Court of Appeals

### For the Seventh Circuit

Nos. 01-3798, 01-4149

NATIONAL STEEL CORPORATION,

*Petitioner/Cross-Respondent*,

*v.*

NATIONAL LABOR RELATIONS BOARD,

*Respondent/Cross-Petitioner*.

Petition for Review and Cross-Application
for Enforcement of Orders of the
National Labor Relations Board.

ARGUED SEPTEMBER 19, 2002—DECIDED APRIL 7, 2003

Before CUDAHY, DIANE P. WOOD, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* The National Labor Relations Board determined that National Steel Corporation violated various provisions of the National Labor Relations Act by refusing to bargain with several unions with which it had collective bargaining agreements (CBAs) regarding the installation and use of hidden surveillance cameras and regarding a confidentiality agreement to accommodate the unions' request for information about existing surveillance cameras. We find that there is substantial evidence to support the Board's findings and therefore enforce its orders.

## I. BACKGROUND

National Steel operates a facility in Granite City, Illinois, where it employs approximately 3000 employees. Those employees are represented by ten different unions and covered by seven different collective bargaining agreements (CBAs). National Steel's Granite City plant uses over 100 video cameras in plain view to monitor areas of the plant. In addition, for the past fifteen years, National Steel periodically has used hidden cameras to investigate specific cases of suspected theft, vandalism, or other instances of wrongdoing. In February 1999, National Steel installed a hidden camera in a manager's file cabinet in an attempt to discover who was using the office at night when the manager was not at work. It discovered that a member of Local 67, one of the union locals covered by a National Steel CBA, was using the office to make long-distance telephone calls. National Steel discharged the employee, and Local 67 filed a grievance over the termination.

During the course of the grievance process, Local 67 President Donald Ogle became aware of *Colgate-Palmolive Co.*, 323 N.L.R.B. 515 (1997), in which the Board held that the use of hidden surveillance cameras by an employer is a mandatory subject of collective bargaining. At a National Steel steering committee meeting in January 2000, Ogle presented the company with a copy of the *Colgate-Palmolive* decision, asked the company for information regarding hidden surveillance cameras, and stated that National Steel needed to talk to the union before it installed additional cameras. Ogle and representatives of five other union locals also sent a letter to National Steel advising it that "the use of hidden surveillance cameras has been deemed by the National Labor Relations Board as a mandatory subject of bargaining and the union has not waived its right to bargain over the subject." The letter also requested "all information concerning any existing hidden surveillance cameras that our members are subjected to that exist in

any and all areas and locations of Granite City, National Steel property."

National Steel responded to the union letter by stating that it had reviewed "[the union's] recent request that [National Steel] provide [the union] with the location of hidden surveillance cameras," that "disclosing the location of this equipment would defeat its purposes," and that "[National Steel] does not believe that the union is entitled to this information." National Steel cited a "consistent and long-standing practice of using surveillance when there is a reasonable suspicion of wrongdoing and in areas where employees should have no expectation of privacy." National Steel also noted that the union had never challenged this practice and previously had requested that union members install the hidden cameras at the Granite City facility.

Local 67 responded by filing charges with the Board, asserting that National Steel refused to bargain over or provide information about the use of hidden surveillance cameras. The Board's general counsel issued a complaint against National Steel, alleging violations of §§ 8(a)(5) and (1) of the Act, 29 U.S.C. §§ 158(a)(5) and (1). An administrative law judge (ALJ) conducted a hearing and recommended the Board find that National Steel is obligated, under *Colgate-Palmolive*, to bargain with the unions over the use of hidden surveillance cameras and the provision of information about such cameras, and also to find that National Steel had failed to do so in response to the union's requests, in violation of § 8(a)(5). The ALJ recommended the Board order National Steel to cease and desist from failing to bargain over the use of such cameras and the provision of information about their use, and to affirmatively engage in such bargaining and information sharing. The Board agreed with the ALJ's findings and adopted the ALJ's proposed order without alteration. *See National Steel Corp.*, 335 N.L.R.B. 60 (2001). National Steel petitions for review of

the Board's order, and the Board cross-appeals for its enforcement.

## II. ANALYSIS

We enforce orders of the Board if its factual findings are supported by substantial evidence and its legal conclusions have a reasonable basis in law. *See* 29 U.S.C. § 160(e); *Naperville Ready Mix, Inc. v. NLRB*, 242 F.3d 744, 751 (7th Cir. 2001); *NLRB v. Roll and Hold Warehouse & Distrib. Corp.*, 162 F.3d 513, 517 (7th Cir. 1998). Substantial evidence exists if a reasonable mind might accept relevant evidence as adequate to support the Board's conclusion. *See NLRB v. Clinton Elecs. Corp.*, 284 F.3d 731, 737 (7th Cir. 2002); *Roll and Hold*, 162 F.3d at 517. On questions of law, we defer to the Board's interpretation of the Act unless it is arbitrary or capricious. *Naperville*, 242 F.3d at 751 (citing *NLRB v. GranCare, Inc.*, 170 F.3d 662, 666 (7th Cir. 1999) (en banc)). When reviewing the record, we defer to the Board's inferences and conclusions drawn from facts, *Clinton Elecs.*, 284 F.3d at 737; *U.S. Marine Corp. v. NLRB*, 944 F.2d 1305, 1314 (7th Cir. 1991) (en banc), but we ensure that its findings fairly and accurately represent the record. *Clinton Elecs.*, 284 F.3d at 737; *NLRB v. Harvstone Mfg. Corp.*, 785 F.2d 570, 575 (7th Cir. 1986).

### A. The Use of Hidden Surveillance Cameras

An employer commits an unfair labor practice when it "refuse[s] to bargain collectively with the representatives of [its] employees." 29 U.S.C. § 158(a)(5); *Mary Thompson Hosp. v. NLRB*, 943 F.2d 741, 745 (7th Cir. 1991). Collective bargaining requires that an employer meet with these representatives "at reasonable times and confer in good faith with respect to wages, hours, and other terms and

conditions of employment." 29 U.S.C. § 158(d). The Supreme Court has held that matters that are both "plainly germane to the 'working environment'" and "not among those 'managerial decisions, which lie at the core of entrepreneurial control'" are mandatory subjects of collective bargaining. *Ford Motor Co. v. NLRB*, 441 U.S. 488, 498 (1979) (quoting *Fibreboard Paper Products Corp. v. NLRB*, 379 U.S. 203, 222-23 (1964) (Stewart, J., concurring)). We give substantial deference to the Board's determination that a matter is subject to mandatory collective bargaining because such determinations are within its particular expertise. *Ford*, 441 U.S. at 497; *Jones Dairy Farm v. NLRB*, 909 F.2d 1021, 1027 (7th Cir. 1990).

The Board determined in *Colgate-Palmolive* that the use of hidden surveillance cameras is a mandatory subject of collective bargaining because it found the installation and use of such cameras "analogous to physical examinations, drug/alcohol testing requirements, and polygraph testing, all of which the Board has found to be mandatory subjects of bargaining." 323 N.L.R.B. at 515 (citations omitted). It found that hidden cameras are focused primarily on the "working environment" that employees experience on a daily basis and are used to expose misconduct or violations of the law by employees or others. *Id.* The Board held that such changes in an employers methods have "serious implications for its employees' job security." *Id.* at 515-16. The Board found that the use of such devices "is not entrepreneurial in character [and] is not fundamental to the basic direction of the enterprise." *Id.* at 515 (citing *Ford*, 441 U.S. at 498, and quoting *Fibreboard*, 379 U.S. at 222-23). We find the Board's legal conclusion, that the use of hidden surveillance cameras in the workplace is a mandatory subject of collective bargaining under the standards set out in *Ford*, objectively reasonable and wholly supported. We accept the Board's determination as conclusive in these circumstances. *Ford*, 441 U.S. at 498; *Jones Dairy Farm*,

909 F.2d at 1027.[1]

National Steel argues that *Colgate-Palmolive* is contrary to public policy. According to National Steel, requiring it to bargain over hidden surveillance cameras, especially as to their locations precludes an employer from meaningfully using such devices because bargaining itself will compromise the secrecy that is required for them to be effective.[2] National Steel also argues that bargaining is so cumbersome that it would not be able to deploy hidden cameras quickly when the need arose. We conclude that the Board's order, like the one in *Colgate-Palmolive*, is not as constricting as National Steel suggests.

In *Colgate-Palmolive*, the Board acknowledged an employer's need for secrecy if hidden surveillance cameras are to serve a purpose. 323 N.L.R.B. at 516 n.10. The Board's order to National Steel preserves those managerial interests while also honoring the union's collective bargaining rights. It only requires National Steel to negotiate with the unions over the company's installation and use of hidden surveillance cameras and, as in *Colgate-Palmolive*, does not dictate how the legitimate interests of the parties are to be

---

[1] National Steel looks to the Board's decision in *Quazite Corp.*, 315 N.L.R.B. 1068 (1994), for the proposition that "the Board held that an isolated, investigative undertaking involving the use of a surveillance camera is not a mandatory subject of bargaining." *Quazite* is inapposite, however, as the security camera in that case was installed only to observe a faulty alarm system wire, not to monitor employees as they went about their daily tasks in the workplace. *Id.* at 1077.

[2] National Steel argues that the cameras were not used solely to catch union employee misbehavior but whatever unknown person committed the crime.

accommodated in the process.[3] The Board's order does not mandate an outcome of negotiations, nor does it make any suggestion that National Steel must yield any prerogatives, other than yielding the right to proceed exclusive of consultation with the union. We agree with the Board that effective accommodation is necessarily dependent on the facts of the individual case and the course of bargaining itself. *See Colgate-Palmolive*, 323 N.L.R.B. at 516 n.11. Here, the Board's order is consistent with the Act's requirement that parties resolve their differences through good-faith bargaining; it simply directs National Steel to initiate an accommodation process, and to provide assertedly confidential information in accord with whatever accommodation the parties agree upon (such as a confidentiality agreement or protective order). The Board's order does not eliminate National Steel's management right to use hidden cameras and it seeks to preserve the level of confidentiality necessary to allow for the continued effective use of such devices.

We reject National Steel's argument that the collective bargaining process is so cumbersome that requiring such bargaining is equivalent to prohibiting any meaningful use of hidden cameras. In *Ford*, the Supreme Court rejected the employer's similar argument that the Board's position would result in "unnecessary disruption because any small change . . . will trigger the obligation to bargain . . . possibly requiring endless rounds of negotiation over [minor] issues." 441 U.S. at 501-02. The Court upheld the Board's determi-

---

[3] In *Colgate-Palmolive*, the Board stated that its ruling "has no bearing upon the content of any agreement or arrangement that may emerge from collective bargaining. Nor does it address the employer's establishment of practices on the subject matter subsequent to having bargained to impasse. It is the duty to bargain and only the duty to bargain that is involved here." 323 N.L.R.B. at 516.

nation that such concerns were "exaggerated," finding that "it is sufficient compliance with the statutory mandate if management honors a specific union request for bargaining about changes that have been made or are about to be made," and that "problems created by constantly shifting [conditions] can be anticipated and provided for in the collective bargaining agreement." *Ford*, 441 U.S. at 501-02. We also reject National Steel's argument that it would be unduly burdensome to require it to bargain over the use of hidden cameras because ten separate local unions represent the Granite City plant employees. As the *Ford* Court stated, such considerations are "essentially irrelevant" because "[t]he definition of a mandatory collective bargaining subject does not depend on the number of unions within the bargaining unit." 441 U.S. at 502 n.13.

National Steel next argues that the union waived its right to bargain over the issue of hidden cameras because it knew about the company's past use of such cameras, never made a timely request for bargaining, and previously had requested that union members install such equipment. A party to collective bargaining, however, waives its right to bargain over an issue only by clearly and unmistakably expressing its intent to do so. *Metro. Edison Co. v. NLRB*, 460 U.S. 693, 708 (1983). "The failure to demand bargaining in the past, without more, does not amount to waiver if it does not unmistakably show that the union intended to permanently give up its right to bargain in the future." *Roll and Hold*, 162 F.3d at 518 (citing *Metro. Edison*, 460 U.S. at 708 n.12). National Steel argues that the union waived its right to challenge the use of the cameras when it filed grievances over previous terminations that were based on hidden camera surveillance evidence and when it requested its employees install the cameras. Most of the other grievances that National Steel points to, however, occurred around the time of the grievance that prompted this case. The union's failure to previously request bargaining in

these circumstances is, therefore, not sufficient to show that the union expressed its clear intent to forego all future bargaining over hidden cameras. Accordingly, the Board reasonably concluded that the union did not waive its right to collectively-bargain over this issue. *Roll and Hold*, 162 F.3d at 518.

## B.   The Confidentiality Agreement

The Act requires an employer provide the union with all requested information that is relevant to a union's discharge of its statutory obligations as representative of bargaining unit employees. 29 U.S.C. § 158(a)(5); *NLRB v. Truitt Mfg. Co.*, 351 U.S. 149, 152-53 (1956); *Naperville*, 242 F.3d at 756: *NLRB v. Pfizer, Inc.*, 763 F.2d 887, 889 (7th Cir. 1985). We apply a broad "discovery-type" standard to determine relevance, and have held that unions should receive a broad range of potentially useful information to fulfill these obligations. *Mary Thompson Hosp.*, 943 F.2d at 745 (internal quotation marks omitted); *see also NLRB v. Acme Indus. Co.*, 385 U.S. 432, 435-37 (1967); *Gen'l Elec. Co. v. NLRB*, 916 F.2d 1163, 1168 (7th Cir. 1990). An employer may be required to provide information that was requested by a union if the Board determines that there is "'a probability that the information is relevant and that it will be of use to the union in carrying out its statutory duties.'" *NLRB v. Ill.-Am. Water Co. S. Div.*, 933 F.2d 1368, 1378 (7th Cir. 1991) (quoting *Pfizer*, 763 F.2d at 889).

The union generally bears the burden of demonstrating that the information it has requested is relevant to its performance of its statutory obligations. *Acme Indus.*, 385 U.S. at 437 n. 6; *Naperville*, 242 F.3d at 756. But its legitimate interest in relevant information does not invariably predominate over the employer's legitimate interests, and in certain situations an employer's confidentiality interests may justify the non-disclosure of certain information.

*Detroit Edison Co. v. NLRB*, 440 U.S. 301, 314 (1979). The Board is therefore required to balance a union's need for relevant but assertedly confidential information against an employer's legitimate and substantial need for confidentiality. That notwithstanding, an employer cannot prevent production of this information simply by asserting that it is "confidential." *Pfizer*, 763 F.2d at 891. Rather, it must bargain toward an accommodation between the union's information needs and the employer's justified interests. *U.S. Testing Co. v. NLRB*, 160 F.3d 14, 20-21 (D.C. Cir. 1998) (employer "must offer to accommodate both its concerns and its bargaining obligations, as is often done by making an offer to release information conditionally or by placing restrictions on the use of that information").

In this case, National Steel flatly rejected the union's request for information about the hidden surveillance cameras, stating that it "[did] not believe that the union [was] entitled to this information" and that this information is not relevant to the union's fulfillment of its duty as bargaining representative. However, because the installation and use of hidden cameras is a mandatory subject of collective bargaining, it necessarily follows that the information regarding hidden cameras is relevant to the union's discharge of its statutory duties and responsibilities. *Acme Indus.*, 385 U.S. at 435-36, *Naperville*, 242 F.3d at 756; *see also NLRB v. Am. Nat'l Can Co.*, 924 F.2d 518, 523 (4th Cir. 1991). National Steel is incorrect that the locations of hidden cameras is the only relevant information requested by the union. In fact, the union requested "all information' concerning existing hidden cameras," which could include a variety of information other than location (such as whether and how many cameras were currently being used, the types of cameras involved, etc.). While National Steel has legitimate confidentiality interests in the information about hidden cameras (*e.g.*, that the disclosure of location might compromise their efficacy), these concerns are susceptible

to accommodation, and the Board properly required National Steel to bargain collectively with the union "for a mutually satisfactory confidentiality agreement, protective order or other procedure," and then to act in accordance with the agreement reached. *U.S. Testing*, 160 F.3d at 20-21. Again, as in *Colgate-Palmolive*, the Board's order only requires National Steel to "bargain over the specificity of the information to be divulged," it does not mandate what information must be disclosed or what outcome must be reached.

### III. CONCLUSION

For the reasons stated above, the Board's orders are ENFORCED.

A true Copy:

       Teste:

                  _____
                  *Clerk of the United States Court of*
                      *Appeals for the Seventh Circuit*